**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PAUL D. SCOTT,**

|  |  |
|---|---|
| **Petitioner,** | **CASE NO. 2:21-cv-04996**<br>**Judge Edmund A. Sargus, Jr.**<br>**Magistrate Judge Elizabeth P. Deavers** |
| **v.** |  |
| **WARDEN, NOBLE**<br>**CORRECTIONAL INSTITUTION,** |  |
| **Respondent.** |  |

## ORDER and REPORT AND RECOMMENDATION

Petitioner, a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and this Court's General Order 22–05.  Pending before the Court are the Petition (Doc. 1); Respondent's Return of Writ (Doc. 7); Petitioner's Reply (Doc. 11); and the state court record (Doc. 6).  For the reasons that follow, it is **RECOMMENDED** that the petition for writ be **DENIED** and that this action be **DISMISSED**.  It is further **RECOMMENDED** that no certificate of authority ("COA") be issued.

In addition, the Undersigned finds that no evidentiary hearing is warranted.  (Doc. 11, PageID # 482.)  Accordingly, Petitioner's request for such a hearing is **DENIED**.

## I.    Facts and Procedural History

The Court of Appeals for Ohio's Fifth District summarized the relevant facts and procedural history of this case as follows:

> {¶ 2} In March of 2019, Detective Jessica Baker of the Mount Vernon Police department was approached by Andrew Ellis. Ellis desired to make controlled narcotics purchases for the department in order to bargain away a fifth degree

felony drug possession charge against his wife. Ellis had a prior drug offense in 2012, illegal assembly of chemicals for the manufacture of drugs, which was accompanied by a child endangering charge.

{¶ 3} Ellis and his wife signed a contract with Butler for two buys from one target suggested by himself, Paul Scott.

{¶ 4} The first buy took place on March 7, 2019. Five detectives participated, Detective Corporal Deshant, and Detectives Butler, Wolf, Haver and Arnold. Ellis advised detectives on that date he could buy an "eight ball" of methamphetamine from Scott for $140. Ellis, his wife, and his vehicle were searched for contraband and found to be clean. Ellis was fitted with a recording/listening device and $140 of buy money.

{¶ 5} Ellis drove to Scott's home at 1008 West Vine Street, a residence located within 300 feet of a school. Deshant, Butler and Wolf followed and parked two blocks away listening to the transaction. Haver and Arnold proceeded likewise and parked at a location where they could maintain visual contact on Ellis as he entered and exited Scott's home and to listen to the transaction. Ellis's wife remained outside. Some of the detectives were familiar with Scott and recognized his voice while the transaction was taking place.

{¶ 6} Following the transaction, detectives met with Ellis at a predetermined location. Detectives seized the drugs and again searched Ellis, his wife, and his car and found no contraband. Ellis was debriefed and stated Scott sold him the drugs and no one else had been present on the home. The drugs were sent to the Bureau of Criminal Investigations (BCI) for testing which confirmed the substance was 3.25 grams of methamphetamine, greater than the bulk amount.

{¶ 7} The same procedure was followed for a second buy which took place on March 22, 2019. This time Ellis participated without his wife. Ellis was again provided with $140 to purchase an eight ball from Scott. Ellis returned with the drugs which were again sent to the BCI and confirmed to be 3.37 grams of methamphetamine.

{¶ 8} As a result of these events, Scott was charged with two counts of aggravated trafficking in methamphetamine pursuant to R.C. 2925.03(A)(1), felonies of the second degree. Each count contained two specifications: the offense was committed in the vicinity of a school, and the amount of methamphetamine involved exceeded the bulk amount.

{¶ 9} Scott pled not guilty to the charges and opted to proceed to a jury trial which took place on July 9 and 10, 2019. The state presented testimony from each of the detectives involved in the matter, two forensic scientists from the BCI, Ellis, and the Knox County Tax Map Supervisor Justin Smith. Scott rested without presenting evidence. The jury subsequently found him guilty as charged.

*State v. Scott*, No.19CA000030, 2020 WL 1526443, at *1 (Ohio Ct. App. March 27, 2020).  At a subsequent July 25, 2019, sentencing hearing, the state trial court sentenced Petitioner to a term of five years of imprisonment on each count, to be served consecutively, followed by three years of post-release control.  (Doc. 6, PageID # 26.)

On August 26, 2019, Petitioner, represented by new counsel, filed a notice of appeal in the state's intermediate appellate court.  (Doc. 1, PageID # 7; Doc. 6, PageID # 28–33.)  Plaintiff raised one assignment of error in that appeal— his due process rights were violated because his convictions were not supported by sufficient evidence and were also against the manifest weight of the evidence.  (Doc. 6, PageID # 37.)  On March 27, 2020, the state appellate court denied that assignment of error and affirmed the state trial court.  *State v. Scott*, 2020 WL 1526443, at *3.

Ordinarily, Petitioner would have had 45 days, or until May 11, 2020, to file an appeal in the Ohio Supreme Court.  But the same day that the state appellate court issued its unfavorable ruling, the Ohio Supreme Court issued an administrative action entitled *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology* ("Tolling Order").  *See* March 27, 2020, Administrative Actions, 2020-1166, Ohio Supreme Court.[1]  As its title suggests, that Tolling Order tolled various deadlines, including any deadlines imposed by the Ohio Supreme Court's Rules for filing pleadings that were due to expire during an "emergency period" that retroactively began March 9, 2020, and ended July 30, 2020.  *Id.*[2]

---

[1] Available at: https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2020/2020-Ohio-1166.pdf

[2] The Tolling Order was set to expire on the earlier of two dates: July 30, 2020, or upon the expiration of Ohio Governor Mike DeWine's declaration of emergency that had been announced on March 9, 2020, in Executive Order 2020-01D.

Petitioner's next step did not entail filing an appeal in the Ohio Supreme Court.  Instead, on June 15, 2020, Petitioner filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure and alleged that he had received ineffective assistance of appellate counsel.  (Doc. 6, PageID # 81–86.)  On September 9, 2020, the state appellate court denied that Rule 26(B) application because it was procedurally flawed.  (*Id*., PageID # 87–89.) The state appellate court determined that Petitioner's application was not supported by a sworn statement of the basis for his ineffective assistance of appellate counsel claim despite a mandatory requirement that it be so supported.  (*Id*.)  The state appellate court also determined that Petitioner's Rule 26(B) application alleged that the evidence presented at trial did not support his convictions, and because appellate counsel had in fact raised manifest weight and sufficiency of the evidence claims in Petitioner's direct appeal, the Rule 26(B) application failed to identify how appellate counsel had performed deficiently despite a requirement to do so.  (*Id*.) Petitioner had 45 days to appeal that September 9, 2020, determination to the Ohio Supreme Court.

But Petitioner never filed an appeal of that September 9, 2020, determination. Approximately six months later, however, on April 15, 2021, Petitioner filed a pro se motion in the Ohio Supreme Court seeking leave to file a delayed appeal of the state appellate court's March 27, 2020, decision affirming his conviction in the state trial court.  (*Id*., PageID # 65–67, 68–78.)  Petitioner indicated that he sought a delayed appeal of that March 27, 2020, decision because of his counsel's failure to inform him of the lower court decision; limited literacy; and the COVID-19 emergency.  (*Id*., PageID # 72.)  The Ohio Supreme Court granted Petitioner's motion for a delayed direct appeal on April 28, 2021, and allowed Petitioner 30 days to file a memorandum in support of that court's jurisdiction.  (*Id*., PageID # 79.)  After Petitioner failed

4

to file anything by that 30-day deadline, the Ohio Supreme Court dismissed Petitioner's delayed direct appeal for failure to prosecute on June 2, 2021.  (*Id*., PageID # 80.)

On September 29, 2021, Petitioner placed his petition in the prison mail system.  (Doc. 1, PageID # 9.)  In Ground One, Petitioner alleges that he received ineffective assistance of trial counsel because trial counsel failed to do the following: 1) move to amend the indictment; 2) call witnesses; 3) effectively communicate with Petitioner during court proceedings; 4) object to a juror who acknowledged dealings with the prosecutor; and 5) allow Petitioner to testify on his own behalf.  (*Id*., PageID # 2–3.)  Petitioner also generally complains that his court-appointed lawyer practiced real estate law and lacked experience trying criminal cases.  (*Id*., PageID # 3.)

In Ground Two, Petitioner appears to allege that the prosecution presented false testimony.  (*Id*., PageID #4.)  In Ground Three, Petitioner alleges that his convictions were against the manifest weight of the evidence.  (Doc. 1, PageID # 5.)  And although he does not explicitly set forth a fourth ground for relief, Petitioner also appears to allege a Double Jeopardy claim allegedly resulting from statutory allied offense issues.  (*Id*., PageID # 5–6.)

In his Reply, Petitioner also requests an evidentiary hearing.  (Doc. 11, PageID # 482.)

## II. <u>Discussion and Analysis</u>

Respondent asserts that the petition is time-barred, and that Petitioner's claims are procedurally defaulted, and in any event, lack merit.  The Undersigned agrees that the claims are procedurally defaulted and does not reach the merits.

### A. Statute of Limitations

The petition does not appear to be time-barred.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on the filing of habeas corpus petitions.  28 U. S. C. § 2244(d) provides:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Pursuant to § 2244(d)(1)(A), the one-year statute of limitations did not begin to run until the expiration of the time for Petitioner to seek direct review; *i.e.*, when the 45-day period for filing a timely appeal with the Ohio Supreme Court expired. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).

Here, the state appellate court affirmed the state trial court on March 27, 2020. *State v. Scott*, 2020 WL 1526443, at *3. And ordinarily, the time to appeal that decision in the Ohio Supreme Court would have expired 45 days later, on May 11, 2020. In this case, however, that May 11, 2020, deadline fell within the emergency period declared in the Ohio Supreme Court's Tolling Order. Therefore, Petitioner's 45-day period was tolled until July 30, 2020. It began running on July 31, 2020, the day after the emergency period ended, and it expired 45 days later, on September 14, 2020.

Petitioner's one-year statute of limitations began running the following day, September 15, 2020, and it continued to run for 212 days, or until April 15, 2021, when Petitioner

6

successfully moved the Ohio Supreme Court for a delayed direct appeal.  (Doc. 6, PageID # 65–67, 68–78.)  That motion, filed before the statute of limitations expired, tolled the statutory period again while it was pending.  *DiCenzi v. Rose*, 452 F.3d 465, 468 (explaining that a properly filed motion for a delayed appeal in the Ohio Supreme Court tolls the statute of limitations even if it cannot restart an expired limitations period) (citing *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001)).[3]  Although Petitioner's motion for delayed appeal was granted, the Ohio Supreme Court dismissed the appeal on June 2, 2021, because Petitioner failed to file a memorandum in support of jurisdiction by the deadline for doing so.  (Doc. 6, PageID # 80.)  The statute of limitations began running the following day, June 3, 2021, and it continued to run for another 153 days, or until November 3, 2021.  Petitioner, however, filed his petition prior to that by placing it in the prison mail system on September 29, 2021.  *Houston v. Lack*, 487 U.S. 266, 270 (1988) (finding that a petition is deemed filed when delivered to prison authorities for forwarding to a District Court).  Accordingly, the Undersigned does not find that the petition is time-barred.

---

[3] The Undersigned does not find that Petitioner's Rule 26(B) application tolled the statute of limitations.  A Rule 26(B) application to reopen is a collateral matter that, if properly filed, will toll the statute of limitations.  *See Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir.2005); *see also* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo,* 544 U.S. 408, 410 (2005) ( "[L]imitations period is tolled . . . while a *properly filed* application for State post-conviction or other collateral review . . . is pending.") (emphasis added) (internal quotations omitted)).  For an application to be "properly filed," its delivery and acceptance must be in compliance with the applicable rules and laws governing such filings which ordinarily includes "the form of the document" and "time limits for its delivery."  *Artuz v. Bennett,* 531 U.S. 4, 8, (2000).  The state appellate court denied Petitioner's Rule 26(B) application because it was procedurally flawed.  (Doc. 6, PageID # 87–89.)  Accordingly, it was not properly filed and did not toll the statutory period during its pendency.

### B. Procedural Default

Respondent also asserts that all of Petitioner's claims are procedurally defaulted. The Undersigned agrees.

"[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, ––– U.S. ––– –, 137 S. Ct. 2058, 2064 (2017))). "A claim may be procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)). First, a petitioner may procedurally default a claim by failing to adequately raise it and pursue it through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lovins*, 712 F.3d at 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")

A claim is adequately raised if it is fairly presented to the state courts. "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009). "This does not mean that the applicant must recite 'chapter and verse' of constitutional law." *Id.* at 415 (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)). Instead, to determine when claims have been "fairly presented," courts ask whether the petitioner: (1) "relied upon federal cases employing constitutional analysis"; (2) "relied upon state cases employing federal constitutional analysis";

(3) "phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right"; or (4) "alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

Second, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing Wainwright v. Sykes, 433 U.S. 72, 80 (1977))). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate state ground for precluding relief, the claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

A petitioner's procedural default may be excused, however, upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Id.* at 138–39. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Rather, to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). In addition, "the prejudice component of the cause and prejudice test is not satisfied if there is

9

strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994)). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

A petitioner's procedural default may also be excused where a petitioner is actually innocent. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To demonstrate actual innocence to excuse a procedural default, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

1. *Grounds One and Two Are Procedurally Defaulted*

a. Ineffective Assistance of Trial Counsel Claims Based on On-the-Record Evidence (Ground One) and the Allied Offenses Claim

In Ground One, Petitioner alleges that he received ineffective assistance of trial counsel. His claims based on the following allegations would appear on the record:

- Trial counsel failed to move to amend the indictment.
- Trial counsel failed to object to a juror who acknowledged dealings with the prosecutor.

The Undersigned find that these on-the-record ineffective assistance of trial counsel claims are procedurally defaulted.

Petitioner indicates that he was represented by different counsel on appeal than he was at trial. (*Id.*, PageID # 7.) When a criminal defendant is represented by a different lawyer on direct appeal, ineffective assistance of trial counsel claims that appear on the face of the record must be

10

raised in the defendant's direct appeal, or they will be waived under Ohio's doctrine of *res judicata.  Greer v. Mitchell,* 264 F.3d 663, 674 (6th Cir. 2001) (citing *State v. Cole,* 2 Ohio St.3d 112 (1982)).  Such are the circumstances here.  Petitioner did not raise his record-based ineffective assistance of trial counsel claims in his appeal to the state intermediate appellate court.  As a result, they are barred by Ohio's doctrine of *res judicata*, which is an independent and adequate state ground for denying federal habeas relief.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

Petitioner appears to contend that he also received ineffective assistance of appellate counsel, and that constitutes cause to excuse the default of his ineffective assistance of trial counsel claims.  (Doc. 1, PageID # 4.)  The Undersigned agrees that in some instances, ineffective assistance of appellate counsel can constitute such cause.  *See Murray*, 477 U.S. at 492 (1986); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005).  Respondent asserts, however, that Plaintiff's ineffective assistance of appellate counsel claims are also procedurally barred, and thus, they cannot constitute cause in this instance.  (Doc. 7, PageID # 113.)  Specifically, Respondent contends that although Petitioner raised ineffective assistance of appellate counsel claims in a Rule 26(B) application, the appellate court denied that Rule 26(B) application on procedural grounds and Petitioner never appealed that determination to the Ohio Supreme Court.  (*Id*.)  As previously explained, the Undersigned finds that these events caused any ineffective assistance of appellate counsel claims in Plaintiff's Rule 26(B) application to be defaulted.  But the Undersigned further concludes that the relevant ineffective assistance of appellate counsel claim has been defaulted for an even more fundamental reason.

As Respondent correctly notes, under Ohio law, ineffective assistance of appellate counsel claims must be raised in a Rule 26(B) application to reopen an appeal.  *Williams v.*

11

*Lazaroff*, 648 Fed. App'x 548, 553 (6th Cir. 2016). But only the particular ineffective assistance of appellate counsel claims that are raised in a Rule 26(B) application will be preserved for habeas review. *See id*. Here, Petitioner filed a timely Rule 26(B) application. (Doc. 6, PageID # 81–86.) In it, he alleged that although appellate counsel "did point out many faults" in the state's case, appellate counsel failed to raise claims on appeal related to other issues with the state's case including that a confidential informant was unable to identify him, the bulk drug amounts at issue were insufficient for the felony levels for which he was charged, and Petitioner was not in a house when a drug buy occurred. (*Id*. at PageID # 81–82, 83.) Petitioner's Rule 26(B) application also alleged that appellate counsel was ineffective because he did not talk with Petitioner personally, let Petitioner know that he could write a letter to assist with his appeal, or contact Petitioner about "how to take steps to go further" in his appeal. (*Id*. at PageID #83, 84, 81.) But even under the most charitable construction, Petitioner's Rule 26(B) application did not allege that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim. Given that Petitioner omitted that particular ineffective assistance of appellate counsel claim from his Rule 26(B) application, it has been defaulted.

Because this particular ineffective assistance of appellate counsel claim was defaulted, it cannot serve to excuse the default of Petitioner's on-the-record ineffective assistance of trial counsel claims. *Edwards v. Carpenter*, 529 U.S. 446, 450–51, 453–54 (2000). In his Reply, however, Petitioner also appears to allege that the COVID-19 virus constituted cause to excuse his defaults. (Doc. 11, PageID # 481.) Petitioner appears to assert that measures were taken in response to the pandemic that "allowed limited movement or no movement at all" and thus deprived "all inmates access to all law libraries in the state of Ohio." (*Id*.) But Petitioner filed his timely Rule 26(B) application on June 15, 2020— during the emergency period declared by

the Tolling Order. (Doc. 6, PageID # 81.) The timing of that filing suggests that his movements were perhaps less restricted than alleged. In any event, Petitioner does not explain why COVID-19, or measures taken in response to it, prevented him from including in his application a claim that his at appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim. Measures taken in response to the pandemic did not prevent him from filing his Rule 26(B) application. The Undersigned cannot conceive of a reason why those measures would have impeded him from simply adding this additional claim to that timely application.

In his Reply, Petitioner also appears to allege that his defaults should be excused because he is actually innocent, and that failure to excuse his procedural defaults will result in a manifest injustice. (Doc. 11, PageID # 479, 481.) Petitioner fails, however, point to new reliable evidence that was not presented at trial to support his actual innocence claim. Therefore, he has not met the high bar for this extraordinary exception. For these reasons, the Undersigned finds that Petitioner's record-based ineffective assistance of trial counsel claims are procedurally defaulted, and that Petitioner has not demonstrated a recognized reason to excuse that default.

        b.  Ineffective Assistance of Counsel Claims Based on Evidence Outside-the-Record (Ground One) and the Prosecution's Use of Perjured Testimony (Ground Two)

Petitioner's other ineffective assistance of trial counsel claims in Ground One would be based on evidence outside the record. That includes claims based on the following allegations.

- Trial counsel failed to call witnesses.
- Trial counsel failed to effectively communicate with Petitioner during trial.
- Trial counsel failed to allow Petitioner to testify on his own behalf.
- Trial counsel was not experienced in criminal law.

In Ground Two, Petitioner alleges that the prosecution used perjured testimony.  That claim would also be based on evidence that appeared outside the record.  The Undersigned finds that these outside-the-record claims are procedurally defaulted.

In Ohio, appellate claims that do not appear on the face of the record must be brought in a post-conviction petition pursuant to Ohio Rev. Code § 2953.21.  *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016) (citing *McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Cole*, 2 Ohio St. 3d at 113))).  Petitioner did not, however, file a § 2953.21 petition raising these outside-the-record claims.  Moreover, Petitioner cannot file a timely such a petition now because more than 365 days have passed since the trial court transcript was filed in the state appellate court on October 3, 2019.  (Doc. 6, at PageID # 92.)  Nor does the record reflect that Petitioner make the requisite showing for filing an untimely § 2953.21 petition.  For instance, Petitioner cannot assert that he was unavoidably prevented from discovering the facts giving rise to these claims given that they rely upon knowledge that Petitioner would have possessed.  *See* Ohio Rev. Code § 2953.23(A)(1)(a).  Nor does he allege that his claim is based on a new federal or state right recognized by the United States Court that applies retroactively to him.  *See id*.

Petitioner again appears to contend that he received ineffective assistance of appellate counsel, and that constitutes cause to excuse the default of his outside-the-record claims.  (Doc. 1, PageID # 4.)  As previously explained, however, ineffective assistance of appellate counsel claims must be raised in a Rule 26(B) application to reopen an appeal.  *Williams*, 648 Fed. App'x at 553.  As also explained, only the particular ineffective assistance of appellate counsel claims that are raised in a Rule 26(B) application are preserved for habeas review.  *See id*.  Here, Petitioner's Rule 26(B) application does not include a claim that appellate counsel was ineffective for failing to apprise him of the filing due date for a post-conviction petition.  (Doc. 6,

14

PageID # 81–84.)[4]  Consequently, that particular ineffective assistance of appellate counsel claim

has been defaulted.  *See Williams*, 648 Fed. App'x at 553.  Therefore, it cannot serve as cause to

excuse his failure to pursue, and thus default, these outside-the-record claims.  *See Edwards,* 529

U.S. at 450–51, 453–54.

In his Reply, Petitioner alleges that the COVID-19 virus constituted cause to excuse his

defaults and that he is actually innocent.  (Doc. 11, PageID # 481, 479.) Again, though,

Petitioner does not explain how measures taken to address the pandemic prevented him from

adding to his Rule 26(B) application an ineffective assistance of appellate counsel claim based

on counsel's failure to apprise him of the timelines for filing a post-conviction petition under §

2953.21.  Nor does he point to new reliable evidence that was not presented at trial to support his

actual innocence claim.  Therefore, the Undersigned finds that these outside-the-record

ineffective assistance of trial counsel claims, and the claim that the prosecution used perjured

testimony, are procedurally defaulted and that Petitioner has failed to demonstrate a recognized

reason to excuse those defaults.

### 2.    *Ground Three is Procedurally Defaulted*

In Ground Three, Petitioner alleges that his convictions were against the manifest weight

of the evidence.  (Doc. 1, PageID # 5.)  Although manifest weight claims are not cognizable in

federal habeas proceedings, liberal construction of the Petitioner's *pro se* claims coupled with his

---

[4] In his Rule 26(B) application, Petitioner states that appellate counsel "did not contact
[Petitioner] about how to take next steps to go further in [his] appeals.  (Doc. 6, PageID # 81.)
The plain wording of this statement indicates that Petitioner was complaining that appellate
counsel failed to inform him about the steps he needed to take to proceed with a direct appeal in
the Ohio Supreme Court, and not the steps Petitioner needed to take to initiate a post-conviction
petition pursuant to § 2953.21.  The timing of this statement, made in a document filed in the
state appellate court on June 15, 2020, also indicates that Petitioner was referring to the steps he
needed to take to proceed with his direct appeal given that it was filed during the emergency
period and before his due date for filing in the Ohio Supreme Court had expired.

initial pursuit of an insufficiency of the evidence claim in the state appellate court persuades the Undersigned to construe Petitioner's manifest weight claim as an insufficiency of the evidence claim, which is cognizable. *See Nash v. Eberlin*, No. 06–4059, 2007 WL 443008, at *764, n.4 (6th Cir. Dec. 14, 2007). But even after construing the claim in this manner, the Undersigned finds that it has been procedurally defaulted.

As noted, Petitioner raised an insufficiency of the evidence claim in the state's intermediate appellate court. The state appellate court overruled that assignment of error on March 27, 2020. *State v. Scott*, 2020 WL 1526443, at *3. Due the Ohio Supreme Court's Tolling Order, Petitioner's 45-day period to file a timely appeal of that determination was tolled until July 30, 2020; it began running on July 31, 2020; and it expired 45 days later, on September 14, 2020. Although Petitioner did not seek an appeal by that due date, the Ohio Supreme Court granted him leave to file a delayed direct appeal on April 28, 2021, and gave him 30 days to file a memorandum in support of that court's jurisdiction. (Doc. 6, at PageID # 79.) After Petitioner failed to meet that 30-day deadline, the Ohio Supreme Court dismissed his appeal for failure to prosecute. (*Id.*, PageID # 80.) Because Petitioner failed to present his insufficiency of the evidence claim to the Ohio Supreme Court, it has been defaulted. *See Agnostini v. Collins*, No. 20–3028, 2020 WL 3815671, at * 2–3 (6th Cir. June 15, 2020) (explaining that claims were procedurally defaulted where a petitioner's delayed appeal to the Ohio Supreme Court was dismissed for want of prosecution after the petitioner failed to file jurisdictional memorandum).

Petitioner appears to assert that he received ineffective assistance of appellate counsel, and that constituted cause to excuse the default of his insufficiency of the evidence claim. (Doc. 1, PageID # 4.) In some instances, appellate counsel's failure to advise a defendant of the deadline for filing an appeal in the Ohio Supreme Court can constitute cause to excuse a default

that results from failure to pursue an appeal in that court. *See Smith v. Ohio Dep't of Rehab & Corr.*, 463 F. 3d 426, 431 (6th Cir. 2006). Nevertheless, Petitioner procedurally defaulted this ineffective assistance of counsel claim, and therefore, it cannot serve as cause to excuse his default of his insufficiency of the evidence claim. *See Edwards,* 529 U.S. at 450–51, 453–54.

Specifically, Petitioner's Rule 26(B) application indicated that appellate counsel failed to contact him about "how to take steps to go further" in his appeal. (Doc. 6, PageID # 81.) But the state appellate court denied Petitioner's Rule 26(B) application for failing to comply with a procedural rule— the application was not supported by a sworn statement of the basis for his ineffective assistance of appellate counsel claim. (Doc. 6, PageID # 87–89.) Rule 26(B)(2)(d) clearly states that an application for reopening must contain such a sworn statement. Although Petitioner submitted an affidavit, it was not notarized, and it did not state the basis for his ineffective assistance of appellate counsel claim. (Doc. 6, PageID # 86.) Because the appellate court declined to reach the merits of Plaintiff's 26(B) application due, at least in part,[5] to Petitioner's failure to comply with the sworn statement requirement, and that requirement is an independent and adequate state grounds for precluding relief, any claims in Petitioner's Rule 26(B) application were procedurally defaulted. *See Thompson v. Anderson*, No. 1:08CV2913, 2010 WL 4026121, at *7 (N.D. Ohio Oct. 13, 2010) (finding petitioner's ineffective assistance of appellate counsel claim defaulted because the Ohio appellate court denied his Rule 26(B) application for failure to comply with Rule 26(B)(2)(d)'s sworn statement requirement); *Belcher v. Smith*, No. 1:09CV627, 2010 256501, at *6 (S.D. Ohio January 21, 2010) (finding that Rule

---

[5] The state appellate court also denied Petitioner's Rule 26(B) application for failing to comply with Rule 26(B)(2)(c).

17

26(B)(2)(d)'s sworn statement requirement is an "adequate and independent state procedural rule" and that failure to comply with it precluded habeas relief).

Moreover, after Petitioner's Rule 26(B) application was denied by the state appellate court, Petitioner failed to appeal that determination to the Ohio Supreme Court.  Accordingly, any claims in his Rule 26(B) application have also been defaulted for this reason as well.  *Carter v. Mitchell*, 693 F.3d 555, 556 (6th Cir. 2012) (finding that an Ohio petitioner's ineffective assistance of appellate counsel claim was procedurally defaulted where petitioner failed to appeal the denial of a Rule 26(B) application to the Ohio Supreme Court); *Nguyen v. Warden, N. Cent. Cor. Inst.*, No. 19–3308, 2019 WL 4944632, at *3 (6th Cir. July 24, 2019) (same).

In his Reply, Petitioner alleges that the COVID-19 virus constituted cause to excuse his defaults, including, presumably, his failure to pursue an ineffective assistance of appellate counsel claim based on counsel's failure to inform him of the September 14, 2020, deadline for seeking an appeal in the Ohio Supreme Court.  (Doc. 11, PageID # 481, 479.)  The Undersigned does not find that COVID-19 constituted cause to excuse Petitioner's default of this ineffective assistance of appellate counsel claim.  But even if it did constitute such cause, Petitioner cannot establish prejudice.  Assuming that appellate counsel failed to inform Petitioner that he had until September 14, 2020, to seek an appeal in the Ohio Supreme Court, the Ohio Supreme Court granted Petitioner leave to file a delayed direct appeal on April 28, 2021, and gave him 30 days after that to file a jurisdictional memorandum.  (Doc. 6, PageID # 79.)  At that point, the Ohio Supreme Court rectified any purported consequences that would have resulted from appellate counsel's alleged failure to inform Petitioner about the September 14, 2020, filing deadline.  But Petitioner failed to pursue his delayed appeal in the Ohio Supreme Court by filing a jurisdictional memorandum.  That failure cannot be attributed to appellate counsel.

18

Petitioner also alleges in his Reply that his default should be excused because he is actually innocent.  (Doc. 11, PageID # 481, 479.)  Again though, he does not point to new reliable evidence that was not presented at trial to support his actual innocence claim.  Therefore, the Undersigned finds that Petitioner's insufficiency of the evidence claim was procedurally defaulted, and that Petitioner has failed to demonstrate a reason to excuse that default.

### 3. The Double Jeopardy/Allied Offenses Claim is Procedurally Defaulted

Although Petitioner does not set forth a fourth ground for relief, he appears to possibly allege a Double Jeopardy claim allegedly resulting from statutory allied offense issues.  (Doc. 1, PageID # 5–6.)  The Undersigned finds that to the extent Petitioner attempts to raise that as a ground for habeas relief, that claim is also defaulted.  Petitioner never raised such a claim in his direct appeal.[6]

Petitioner appears to contend that he received ineffective assistance of appellate counsel, and that constituted cause to excuse the default of his outside-the-record claims.  (Doc. 1, at PageID # 7.)  As previously explained, however, ineffective assistance of appellate counsel claims must be raised in a Rule 26(B) application to reopen an appeal.  *Williams*, 648 Fed. App'x at 553.  And again, only the particular ineffective assistance of appellate counsel claims raised in a Rule 26(B) application are preserved for habeas review.  *See id*.  Here, Petitioner's Rule 26(B) application does not include a claim that appellate counsel was ineffective for failing to raise an allied offenses/double jeopardy claim.  (Doc. 6, at PageID # 81–84.)  Consequently, that particular ineffective assistance of appellate counsel claim has been defaulted.  *See Williams*, 648

---

[6] When allied offense claims are not raised in the state trial court, they are procedurally defaulted. Because Respondent did not file a copy of the state trial court transcript, it is unclear if Petitioner's trial counsel raised this issue at sentencing.  In any event, as explained herein, the claim was not raised in his direct appeal, and it is therefore, defaulted for that reason.

Fed. App'x at 553.  Therefore, it cannot serve as cause to excuse his default his Double Jeopardy claim.  *See Edwards,* 529 U.S. at 450–51, 453–54.

Nor does Petitioner demonstrate cause to excuse his default of this ineffective assistance of appellate counsel claim.  Although he cites COVID-19, he does not explain how the pandemic prevented him from including this additional claim in his timely Rule 26(B) application.  Nor does he point to new reliable evidence to support his actual innocence claim.  Accordingly, the Undersigned finds that Petitioner's allied offenses/Double Jeopardy claim is procedurally defaulted and that he has failed to demonstrate a reason to excuse that default.

### C.    Evidentiary Hearing

In his Reply, Petitioner also requests an evidentiary hearing.  (Doc. 11, PageID# 482.) His arguments for a hearing, however, go to the merits of his defaulted claims.  Petitioner appears to allege that the evidence used to support his convictions was not credible because the drug buy in which he participated was not video recorded; a confidential informant identified Petitioner after the prosecution pointed Petitioner out; and police failed to properly surveille the confidential informant after the drug buy.  (*Id.*)  But Petitioner's claims are procedurally defaulted, and he has not shown cause and prejudice to overcome those defaults.  In these circumstances, an evidentiary hearing is not necessary.  *Mays v. Black*, No. 1:20 CV 1402, 2022 WL 873793, at * 3 (N.D. Ohio March 24, 2022) (citing *Werber v. Milligan*, 2012 WL 1458103, *23 (N.D. Ohio) (discovery seeking to develop new evidence as to defaulted claims would be futile) and *Judon v. Trombley*, No. 2:07–CV–13912, 2008 WL 4279371, at *4 (E.D. Mich. Sept. 15, 2008) ("Because Petitioner's claims are procedurally defaulted and he has failed to establish cause or prejudice or a miscarriage of justice to excuse the default, he is not entitled to

20

an evidentiary hearing on his claims.)). Accordingly, Petitioner's request for a hearing is **DENIED**.

### III. <u>Conclusion and COA Recommendation</u>

For all the reasons contained discussed herein, Petitioner's request for an evidentiary hearing is **DENIED**. In addition, the Undersigned concludes that Petitioner's claims are procedurally defaulted. The Undersigned, therefore, **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court must consider whether to issue a COA. A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA. 28 U.S.C. § 2253(c)(1)(A). When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). When a claim has been denied on procedural grounds, a COA may be issued if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

The Undersigned is not persuaded that reasonable jurists could debate that Petitioner's claims are procedurally barred.  Therefore, the Undersigned **RECOMMENDS** that the Court **DECLINE to issue a COA**.

The Undersigned also concludes that an appeal would not be in good faith and thus further **RECOMMENDS** that any application to proceed in forma pauperis on appeal be **DENIED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . . ") (citation omitted)).

**IT IS SO ORDERED**.

Date:  April 20, 2022                                  */s/ Elizabeth A. Preston Deavers*
                                                       **ELIZABETH A. PRESTON DEAVERS**
                                                       **UNITED STATES MAGISTRATE JUDGE**

22